G. Frank Grenier vs. City of New Bedford.

Bristol.    December 11, 1975. — March 18, 1976.

Present: Rose, Keville, & Armstrong, JJ.

*Practice, Civil*, New trial. *Evidence*, Of value, Judicial discretion. *Eminent Domain*, Evidence of value.

Where a judge in response to the plaintiff's motion for a new trial granted an additur of $25,000 to the jury's verdict or, in the alternative, a new trial on the issue of damages stating that the verdict was inadequate, the judge's order complied with the statutory directive of G. L. c. 231, §§ 127 and 128. [153-154]

At a trial for assessment of damages under G. L. c. 79, § 14, for the taking of land by eminent domain, the judge erred in allowing the plaintiff to testify as to the sale price contained in a conditional option or purchase and sale agreement for a portion of the land and to testify as to his opinion, based on that agreement, of the fair market value of that portion. [154-156]

At a trial for assessment of damages under G. L. c. 79, § 14, for the taking of land by eminent domain, the judge did not abuse his discretion in excluding on cross-examination of the plaintiff the price he had paid for the land eleven years before the taking. [156]

At a trial for assessment of damages under G. L. c. 79, § 14, for the taking of land by eminent domain, the judge did not err in allowing the plaintiff's witnesses to testify as to comparable sales of land. [156-157]

Petition for assessment of damages filed in the Superior Court on June 11, 1969.

Following the allowance of a motion for a new trial by *Donahue, J.*, the case was tried before *Mitchell, J.*

*Armand Fernandes, Jr.*, for the defendant.

Rose, J.   This is a petition for an assessment of damages under G. L. c. 79, § 14, following the taking by eminent domain of the plaintiff's land on June 19, 1968. The property in question consisted of two parcels of vacant land located in New Bedford, one containing approxi-

mately eleven acres[1] and the other containing approxi-
mately 9,000 square feet. A jury returned a verdict for
the plaintiff in the amount of $40,000 on May 3, 1973. Fol-
lowing a motion for a new trial by the plaintiff, the court
determined that the verdict was inadequate by $25,000
and entered an order, to which the defendant duly ex-
cepted, that unless the defendant should accept an addi-
tur in the amount of $25,000 within ten days, the verdict
would be set aside with a new trial granted on the issue
of damages. The defendant refused to accept the additur.
The second jury trial resulted in a verdict and judgment
for the plaintiff in the amount of $73,000 on September 16,
1974, from which judgment the defendant has appealed.

I. The defendant raises only one question in regard to
the first trial. It argues that the trial court's order grant-
ing the plaintiff an additur or a new trial did not properly
follow G. L. c. 231, §§ 127 (as in effect prior to St. 1975,
c. 377, § 109) and 128 (as in effect prior to St. 1973, c. 1114,
§ 205). In substance, those sections (read together) pro-
vided that a verdict could be set aside and a new trial or-
dered only upon a motion in writing, by a party to the
cause, alleging reasons, and that the judge in granting a
new trial was to "file a statement setting forth fully the
grounds upon which the motion is granted, which state-
ment shall be a part of the record of the case" (§ 128).

The grounds of the motion for a new trial in this case
were that the verdict was against the law, against the evi-
dence and against the weight of the evidence. The court's
additur, however, specifically adjudged the verdict "inade-
quate" in the amount of $25,000.

The requirement that the order for a new trial set forth
fully the grounds on which the motion is granted (§ 128)
"signifies ... that among the reasons alleged in the motion
the court shall specify with particularity the grounds on
which his mind rests in reaching his conclusion. The par-
ties thus are advised of the exact foundation for the action

---

[1] There was some evidence that part of that parcel had been used
several times as the site of a circus or carnival.

taken by the judge." *Anti* v. *Boston Elev. Ry.* 247 Mass. 1, 5 (1923). The judge's determination that the verdict was inadequate constituted a direct response to at least one of the grounds of the motion, namely that the verdict was against the weight of the evidence. The court's order was not required to mirror precisely any of the grounds stated in the plaintiff's motion. We, therefore, are of the opinion that the order complied with the statutory directive and was proper. Compare *Anti* v. *Boston Elev. Ry.* 247 Mass. at 4-5; *Carver-Beaver Yarn Co. Inc.* v. *Wolfson,* 249 Mass. 257, 258-259 (1924); *Webster* v. *Bracci,* 348 Mass. 770 (1964); *Mascaro* v. *Ten Pin Bowling Center of Wilbraham, Inc.* 353 Mass. 754 (1967). Contrast *Wright* v. *Apikian,* 270 Mass. 302 (1930).

II. In reference to the second trial, the defendant advances several grounds for reversal. On the basis of one of them, we hold that the defendant is entitled to a new trial. There are, however, several other questions raised by the defendant which we consider only because they are likely to recur at the new trial.

A. The defendant's most persuasive argument in this part of its appeal is that at the second trial the plaintiff was improperly permitted to (1) testify as to the sale price contained in what was alternatively referred to by the plaintiff as an "option" agreement or "purchase and sale" agreement to sell the eleven-acre parcel of the subject property and (2) to testify, based on that agreement, as to his opinion of the fair market value of that part of the property.[2] At trial, there was testimony that this agreement, which was made in 1967, conditioned any possible sale on a change of the zoning classification which had existed up to the time of the taking.[3]

It is generally proper to admit testimony as to the price which the owner paid in acquiring the locus and opinions

---

[2] The record does not indicate whether the judge treated this agreement as an option agreement or a purchase and sale agreement.

[3] The contemplated zoning change was to be from "multiple family" to "business."

Grenier *v*. New Bedford.

as to its value based thereon (if the purchase was not too remote in time) (see e.g., *Ramacorti* v. *Boston Redevelopment Authy*. 341 Mass. 377, 381-382 [1960]; *Burley* v. *Old Colony R.R.* 219 Mass. 483 [1914]; Nichols, Eminent Domain, § 21.2 [3d ed. 1975]; see also section IIB of this opinion, *infra*), evidence of the contract prices of recent land sales involving similar properties (see e.g., *Boston & Worcester R.R.* v. *Old Colony & Fall River R.R.* 3 Allen 142, 145-146 [1861]; *Valley Paper Co.* v. *Holyoke Housing Authy*. 346 Mass. 561, 569 [1963]; see also section IIC of this opinion, *infra*), and evidence of binding executory contracts absolute in terms relating to the land taken (*Brush Hill Development* v. *Commonwealth*, 338 Mass. 359, 365 [1959]). However, courts have been unwilling to admit testimony as to, or opinions based on, unaccepted offers to buy the land in question (see e.g., *Sharp* v. *United States*, 191 U. S. 341, 348-349 [1903]; *Dickenson* v. *Fitchburg*, 13 Gray 546, 554 [1859]). Thus, this type of testimony has been essentially limited to "actual sales as acts done." *Davis* v. *Charles River Branch R.R.* 11 Cush. 506, 509 (1853). In light of the above, the conditional contract in question here (whether it constituted an option or purchase and sale agreement) was a speculative executory agreement "based upon so many contingencies as to be meaningless on the issue of fair market value." *Brush Hill Development* v. *Commonwealth*, 338 Mass. at 365. Since "the testimony as to value given by this witness was based upon erroneous foundations," evidence concerning the agreement should not have been admitted and the motion to strike this evidence and the opinion based on it should have been allowed. See *Maher* v. *Commonwealth*, 291 Mass. 343, 348-349 (1935), citing *Greenspan* v. *County of Norfolk*, 264 Mass. 9, 12-13 (1928). See also *Boston Gas Co.* v. *Assessors of Boston*, 334 Mass. 549, 579 (1956).

At the conclusion of the presentation of evidence the defendant requested that the judge charge the jury that it should disregard the conditional agreement as evidence of the fair market value of the property (defendant's request for instructions no. 10). In light of our discussion

with reference to the admission of this evidence, the request raised no new question and need not be separately considered.

B. The defendant maintains that it was an abuse of discretion for the trial judge to exclude on cross-examination of the plaintiff the price he had paid for the larger parcel in 1957. While the sale price of the subject property "is one of the most important pieces of evidence in determining its present value [in this case the value at the time of the taking]" (Nichols, Eminent Domain, § 21.2 [3d ed. 1975], "[w]hether the time of buying the property was so remote in time that the price would afford no indication of the value at the time of the taking was largely within the discretion of the judge." *Lembo* v. *Framingham,* 330 Mass. 461, 463 (1953). We cannot say that there has been an abuse of discretion here where the purchase occurred eleven years before the taking. See *Johnson* v. *Lowell,* 240 Mass. 546, 549 (1922); *Ford* v. *Worcester,* 335 Mass. 723, 725 (1957).[4]

C. The defendant asserts that the court at the second trial erred in admitting testimony of prices paid for "comparable" property offered by certain of the plaintiff's witnesses as the basis for their opinions of the value of the property. Essentially, it argues that an extensive city development program on the situs and bordering area shortly after the taking affected land valuations of sales offered as comparable such that it was an abuse of discretion for the judge to allow their admission.

Our examination of the entire record does not reveal this to be the case. At trial the plaintiff's witnesses testified as to "comparable" sales that took place from two and one quarter years before the taking to two and one

---

[4] The defendant also argues that this testimony was improperly excluded because the judge arbitrarily restricted testimony to five years either before or after the taking, stating, "we are in a period of inflation." We do not find it necessary to discuss this contention as, in view of our ultimate disposition of the case, we expect that, if such a time limitation should be established at any future trial, it would be only after an appropriate voir dire examination that would demonstrate the validity of such a restriction.

half years after the taking (and in one case four years after the taking) in formulating their individual opinions of the value of the land. There was conflicting testimony concerning the effect that the construction had on land values in the area. We are of the opinion that the evidence of comparable sales was properly admitted and was for the jury to evaluate. See *Burchell* v. *Commonwealth*, 350 Mass. 488, 490 (1966). See generally, Nichols, Eminent Domain, § 21.31[2] (3d ed. 1975).[5]

In view of our disposition of this case, we do not find it necessary to deal with any other questions raised by the defendant.

In summary, we hold that error was committed by the judge in denying the defendant's motion to strike the testimony concerning the conditional sales agreement and the opinion based thereon. A new trial must be held.

*Judgment reversed.*

---

[5] The defendant also contends that the judge erred in restricting testimony concerning sales of property offered as "comparable" to five years either before or after the taking. However, we do not find it necessary to discuss this point since there is nothing in the record that would show that any sales offered as "comparable" were excluded on the basis of any such restriction.